408 F.2d 878
 SECURITY INSURANCE COMPANY, Appellant,
v.
ALLIANCE MUTUAL INSURANCE COMPANIES et al., Appellees.
Herman LEVINE and Shirley Levine and Gary Hammond, Appellants,
v.
SECURITY INSURANCE COMPANY, a corporation and Alliance Mutual Insurance Companies, Appellees.
 No. 10022.
 No. 10023.
 United States Court of Appeals Tenth Circuit.
 March 28, 1969.
 
 Mary C. Walters, Albuquerque, N. M. (Toulouse, Ruud, Gallagher & Walters, Albuquerque, N. M., on the brief), for appellant, Security Ins. Co.
 C. LeRoy Hansen, Albuquerque, N. M. (Civerolo, Cushing & Hansen, Albuquerque, N. M., on the brief), for appellees, Alliance Mut. Ins. Companies.
 John Burton, Albuquerque, N. M. (George P. Jones, III, and Willard F. Kitts, Albuquerque, N. M., on the brief), for appellants, Levine and Hammond.
 Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.
 HICKEY, Circuit Judge.
 
 
 1
 A declaratory judgment action[1] was tried in the district court by appellant Security Insurance Company against appellee Alliance Mutual Insurance Company. The purpose of the action was to determine whether either or both companies' garage liability policies cover an accident which is the subject of litigation in the state courts.
 
 
 2
 The trial court determined Security was liable, absolving Alliance from liability of any kind.
 
 
 3
 Security Insurance appeals contending that (1) their policy excludes them from liability; (2) Alliance Mutual is solely liable; (3) in the alternative, there is a pro rata joint liability.
 
 
 4
 The facts are not in dispute. Appellant Security issued a garage liability policy to New Mexico Toyota Company, Inc. Alliance Mutual issued a commercial cover-all policy to Charlie Weaver Trailer Sales, Inc., Charles R. Weaver and L. R. Cumerford, d/b/a Sandia Trailer Sales, which contains a garage liability endorsement covering premises, operations and automobiles.
 
 
 5
 Stolworthy, the manager of Toyota, agreed with Weaver that he would participate in a sales promotion to be carried on at Sandia Trailer Sales lot by providing used cars for sale. The used car involved in the action in the state court was a Ford Thunderbird owned by Toyota which was delivered to the promotion venture for sale at a price that would return $950.00 to the Toyota agency if, and when, it was sold. Any amount above the $950.00 was to be divided between Newman and Weaver operating as Sandia Sales. The car was delivered to Hammond who was on the payroll of Charlie Weaver Sales and thereafter when Hammond was returning from a filling station where the car had been serviced, the accident above referred to occurred. Cross-appellants Levine were injured and instituted the action now pending in state court.
 
 
 6
 Toyota, through Stolworthy, settled for the loss of the vehicle with Security Insurance.
 
 
 7
 The trial court in its memorandum decision found that Toyota was the owner of the car, had given permission to use it, and accordingly held its insurance company liable.
 
 
 8
 Alliance was absolved by the trial court on the grounds that the sales promotion venture was outside the scope of coverage afforded in its policy to Sandia Trailer Sales and Charlie Weaver Trailer Sales. The basic issue then involves an interpretation of the various terms contained in the insurance contracts.
 
 
 9
 Universal Underwriters Ins. Co. v. Bush,[2] teaches that in the interpretation of insurance contracts it is important to look for the class whose driving errors the policy insured against.
 
 
 10
 Each policy would appear by its provisions[3] to cover the driving errors of the class here involved.
 
 
 11
 Security contends their policy does not apply to the class because their policy provides an exclusion[4] by the language "possession of which has been transferred to another by the named insured pursuant to an agreement of sale. * * *"
 
 
 12
 The trial court found there was no sale; therefore, the exclusion did not apply.
 
 
 13
 Appellant contends the court erred because the Uniform Commercial Code enacted in New Mexico clearly places this transaction within its "sale or return" provision and therefore under the act it was clearly a sale.
 
 
 14
 An examination of the New Mexico statutes shows that §§ 50A-2-326 and 50A-2-327 N.M.Stat.Ann. (1953) were adopted without change from the Uniform Commercial Code.[5]
 
 
 15
 "The type of `sale or return' involved herein is a sale to a merchant whose unwillingness to buy is overcome only by the seller's engagement to take back the goods (or any commercial unit of goods) in lieu of payment if they fail to be resold. These two transactions are so strongly delineated in practice and in general understanding that every presumption runs against a delivery to a consumer being a `sale or return' and against a delivery to a merchant for resale being a `sale on approval.'"[6]
 
 
 16
 Considering this comment together with the fact that Stolworthy Toyota was paid for the loss of the Thunderbird by Security Insurance, we conclude the trial court did not err in finding that Security was liable on the grounds that there was no sale and therefore no exclusion under the terms of the policy.
 
 
 17
 Alliance Mutual contends, and the trial court agreed, that the sales promotion venture in which Weaver was involved did not have coverage extended to it under Alliance's policy. We therefore examine the nature of the promotion venture.
 
 
 18
 Weaver associated with Newman for a three-day sales promotion of used cars to be conducted from Sandia Trailer Sales lot. During the promotion the word "trailer" was covered on the identifying sign on the lot and the words "Sandia Sales" identified the operation.
 
 
 19
 In its memorandum which substituted for findings of fact and conclusions of law, the court used various tags of identity for the association of Weaver and Newman. It was called a venture, a joint venture, and a car promotion. The significant conclusion that "the arrangement * * * was a separate and distinct undertaking or entity and not a part of the assured risk," is a conclusion which we will not overturn unless the facts upon which it is based are clearly erroneous.[7]
 
 
 20
 The trial court said: "The essence of the agreement finally reached between them was that Weaver and one Rus Newman would take certain of Stolworthy's cars and attempt to sell them, keeping for themselves any money received in such sales above an amount fixed by Stolworthy as the price he wanted for each car. Any cars not sold during their promotional venture would be returned to Stolworthy. Essentially, Weaver and Newman were agreeing to find buyers for the cars owned by Stolworthy."
 
 
 21
 "A joint venture requires only that the parties combine their property, money, efforts, skill or knowledge in some common undertaking. The contribution made by each party need not be of the same character. A co-ownership of property is not essential, so long as each joint venturer contributes something promotive of the enterprise."[8]
 
 
 22
 The facts found relating to the agreement give substantial support to the conclusion that a joint venture existed; therefore, we cannot say it was clearly erroneous.[9] Therefore Alliance Mutual is absolved of liability.
 
 
 23
 With the determination that Alliance is not liable, and that Security is liable, there is no reason to consider the pro rata joint liability claim.
 
 
 24
 We affirm the trial court's decision.
 
 
 25
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 28 U.S.C. § 2201
 
 
 [2]
 272 F.2d 675 (10th Cir. 1959)
 
 
 [3]
 The Security Policy provided: "* * * The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * property damage to which Part I applies, caused by accident and arising out of the garage operations hazard, including only the automobile hazard for which insurance is afforded as indicated in the declarations; "Garage operations hazards. The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called `garage operations.'
 "Automobile Hazards: 1. All Automobiles: (a) The ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations * * *.
 "Persons Insured: Each of the following is an insured under Part I, except as provided below:
 "(3) With respect to Automobile Hazard: (a) any person while using, with the permission of the named insured, an automobile to which the insurance applies under paragraph I(a) or 2 of the Automobile Hazards, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission. * * *" The Alliance Policy provided: "It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability-Automobile applies to the hazards defined below, subject to the following provisions. * * *
 "(a) the ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations. * * *
 "(a) any person while using an automobile to which the insurance applies under paragraph (b) of the Automobile Hazard with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission. * * *
 "Definitions: (a) Automobile: `Automobile' means a land motor vehicle or trailer, other land equipment capable of moving under its own power, equipment for use therewith and animal drawn equipment; the word `trailer' includes semi-trailer. * * * (d) Garage: `Garage' means an automobile sales agency, repair shop, service station, storage garage or public parking place."
 
 
 [4]
 The Security Policy provided the following exclusion: "(iii) any person or organization other than the named insured with respect to any automobile (a) owned by such person or organization or by a member (other than the named insured) of the same household, or (b) possession of which has been transferred to another by the named insured pursuant to an agreement of sale * * * "`garage' means an automobile sales agency, repair shop, service station, storage garage or public parking place; "`premises' means premises where the named insured conducts garage operations, and includes the ways immediately adjoining but does not include any portion of such premises upon which business operations are conducted by any other person or organization. * * *"
 
 
 [5]
 ULA Uniform Comm.Code, §§ 2-326 and 2-327, pgs. 180, 184
 
 
 [6]
 ULA Uniform Comm.Code, § 2-326, Comment 1, pg. 182
 
 
 [7]
 Fed.R.Civ.P. 52(a)
 
 
 [8]
 Wood v. Western Beef Factory, Inc., 378 F.2d 96, 98 (10th Cir. 1967)
 
 
 [9]
 Glens Falls Ins. Co. v. Newton Lumber & Mfg. Co., 388 F.2d 66, 70 (10th Cir. 1967)